**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**Civil Action No. 5:21-cv-00092-BJB-LLK**

ROSE W. LAWRENCE                                                                                    PLAINTIFF

v.

PADUCAH CENTER FOR HEALTH AND REHABILITATION, LLC, et al.                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>
<u>DENYING MOTION FOR PROTECTIVE ORDER</u>

This matter is before the Court on Defendants' motion for a protective order to prevent the Plaintiff from taking the depositions of two of the owners of the Defendant corporations, to which Plaintiff responded in opposition, and Defendants replied.  [Doc. 53, 54, 56].  The Court referred the matter to the undersigned Magistrate Judge for "hearing and determining all pretrial matters, including non-dispositive motions."  [Doc. 6].

For the reasons stated below, the Motion is denied.

**Background facts and procedural history**

This is a diversity action alleging medical malpractice and personal injury in a nursing home context.  Plaintiff Rose Lawrence is the administratrix of the estate of Joe Lawrence.  Plaintiff filed her complaint in McCracken Circuit Court, and Defendants removed the matter to this Court.  [Doc. 1].

In her complaint, Plaintiff seeks compensatory and punitive damages against two Defendant corporations:

1. Paducah Center for Health and Rehabilitation, LLC, d/b/a Stonecreek Health and Rehabilitation; and

2.  Clearview Healthcare Management KY, LLC, d/b/a Clearview Healthcare Management.

[Doc. 1-1 at Paragraphs 25, 31, 39, 44, 48, 51].

Simcha Hyman and Naftali Zanziper were owners or part owners of one or both of these Defendant corporations at the time of the events giving rise to Plaintiff's complaint.

1

In April 2022, the undersigned entered an Opinion and Order granting Defendants' motion, allowing Defendants to have ex-parte communications with Plaintiff's treating health care providers. [Doc. 31].

On February 7, 2023, the undersigned entered a scheduling order, which stated, among other things, that Defendants may file a motion for a protective order as it relates to the "depositions at issue" on or before February 17, 2023.  [Doc. 52].  The motion, response, and reply are at Doc. 53, 54, and 55, and the motion at Doc. 53 is ripe for ruling.

### Interpretation of the motion at Doc. 53

The motion at Doc. 53 is based on Fed. R. Civ. P. 26(c)(1)(A), which provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(A). Defendants argue that it would amount to annoyance for them to be deposed in light of their "high level," or "apex," position within the Defendant corporations and their lack of knowledge of Plaintiff's claims. [Doc. 53].

No deposition of Hyman and Zanziper has been scheduled in this case.  Therefore, this Order interprets the "depositions at issue" [Doc. 52] (i.e., the subject of the present motion at Doc. 53) to be any future deposition of Hyman and Zanziper, on any topic, including Plaintiff's claims for punitive damages.

### Exhibits appended to the motion, response, and reply

In support of their motion [Doc. 53], Defendants append an exhibit consisting of identical affidavits signed by Hyman and Zanziper in February 2023 [Doc. 53-1].  The affidavits state that:

1.  I … am over the age of 18 and am able and competent to affirm or swear to this Affidavit. I am a resident of New York.

2. I have never been a clinician, doctor, nor nurse.

3. I have never been a licensed nursing home administrator.

2

4. From April 1, 2018 to December 1, 2021, I had a 50% ownership stake in Paducah Center for Health LLC d/b/a Stonecreek Health and Rehabilitation ("Stonecreek"). During that time, I never participated in daily operations, nor directed care, nor staffing at Stonecreek. As of December 1, 2021, I no longer have an individual ownership stake in Stonecreek.

5. I am a member of and have a 50% ownership stake in Clearview Healthcare Management KY LLC d/b/a Clearview Healthcare Management ("Clearview"). I have never participated in the daily operations of Clearview.

6. I have no direct, independent, personal, special, nor unique knowledge of any accommodations or care that Joe Lawrence may or may not have received at Stonecreek, nor anywhere.

7. I have no direct, independent, personal, special, nor unique knowledge of any business administration, policies, procedures, budgeting, goals, targets, finances, census, nor staffing at Stonecreek.

8. I have no special, nor unique knowledge of any operations of Clearview. It has employees in Kentucky responsible for same.

9. I have no direct nor personal knowledge of the facts alleged or underlying in this lawsuit.

10. Appearing for deposition in this lawsuit would be unduly burdensome and create hardship regarding my daily schedule and expensive for me personally to afford counsel.

[Doc. 53-1].

In opposition to the motion [Doc. 54], Plaintiff appends an exhibit consisting of certain "emails exchanged in this case" [Doc. 54-2].  Plaintiff argues that these emails are "demonstrative of Mr. Hyman's and Mr. Zanziper's involvement with and knowledge of many aspects of nursing home operations (referral and admissions of patients, regulatory compliance, patient-specific progress/condition information, daily census reports, daily labor reports) pertaining to facilities operated and owned by entities in which they hold exclusive ownership/membership interests and control."  [Doc. 54 at PageID.609].

In their reply [Doc. 56], Defendants disagree with Plaintiff's characterization of the emails at Doc. 54-2 and argue that the emails:

> … actually show a compelling lack of involvement.  …  The few emails they were CC'd on show not CEOs with active participation or relevant knowledge, but rather the occasional overview update to company ownership.

[Doc. 56 at PageID.649].  Defendants append an exhibit [Doc. 56-1] consisting of evidence that Hyman is a "member/owner of 51 companies just in Kentucky" and that Zanziper is a "member or owner of 31 companies just in Kentucky."  *Id.* at 649-50.  They argue that, in light of their extensive business interests in Kentucky alone, to "expect them to have relevant knowledge of the facts surrounding Plaintiff's claims is unreasonable" and to suggest otherwise is "disingenuous."  *Id.* at 650.

### Findings and conclusions

In light of the foregoing, the Magistrate Judge finds and concludes as follows:

1.  Fed. R. Civ. P. 26(c)(1)(A) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(A).

2.  Defendants seek a court order, pursuant to Fed. R. Civ. P. 26(c)(1)(A), barring them from being deposed in this case on any matter, including Plaintiff's claims for punitive damages, in light of lack of knowledge of Plaintiff's claims and their "high level," or "apex," position within the Defendant corporations.

3.  In her response in opposition to Defendants' motion for a protective order, Plaintiff relies upon and appends a copy of *Harris v. Midtown Center for Health and Rehabilitation, LLC*, No. 2:19-cv-02397-JTF-JAY (W.D. Tenn., Feb. 21, 2023).  [Doc. 54-1].  *Harris* is unavailable on Westlaw.  In *Harris*, Defendant moved to prevent the deposition of Hyman and Zanziper – the same movants in the present case – based on their "apex" position in the Defendant corporation and lack of knowledge of the specifics of some of Harris's claims.  The Western District of Tennessee ruled that their depositions were required in light of their knowledge of the "facility's operation, admissions process, regulatory compliance … and other reports" and of the "corporate structure, management agreement, and operating agreement."  The testimony of Hyman and Zanziper is required in the present case for essentially the same reasons as in *Harris*.

4.  A conclusion that Hyman and Zanziper are subject to deposition notwithstanding their lack of knowledge of the specifics of some of Plaintiff's claims and their "apex" position within the Defendant corporations finds support in four cases from this Court:

a.  In *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012), the Sixth Circuit declined to apply the "apex" doctrine to shield the president and CEO of Cintas from deposition.  Cintas moved for a protective order barring deposition, and the district court granted the motion.  "Although [*Serrano*] remanded that [protective order] issue for 'further proceedings' the [*Serrano*] opinion clearly suggested the deposition should be allowed."  *E.E.O.C. v. Cintas Corp.*, No. 04-40132, 2015 WL 1954476, at *3 (E.D. Mich. Apr. 29, 2015).

b.  In *Bailey v. Kentucky Cmty.*, No. 5:14-CV-143-TBR-LLK, 2015 WL 4886089 (W.D. Ky. Aug. 17, 2015), this Court declined to assume, in light of his former "apex" position, that it was inherently harassment and abuse to ask a former college president to come to Kentucky to participate in a deposition.  While the former president may have lacked knowledge of the specifics of Bailey's claims, deposition was required because he possessed "information related to Defendant's employment policies and practices."

c.  In *Green v. Platinum Restaurants Mid-Am., LLC*, No. 3:14-CV-439-GNS, 2017 WL 11682937 (W.D. Ky. Oct. 24, 2017), this Court declined to "assume that the mere act of deposing [restaurant president and founder] Humphries is itself equivalent to harassment and abuse due to his corporate CEO status."  While Humphries may have lacked knowledge of the specifics of Green's claims, deposition was required because he possessed "knowledge about the development and implementation of the policies" affecting restaurant employees.

d.  In *Petty v. Bluegrass Cellular, Inc.*, No. 319CV00193-RGJ-LLK, 2021 WL 1235266 (W.D. Ky. Apr. 2, 2021), this Court recognized that, as a general rule, the "Apex Doctrine" does not prohibit deposition testimony:

> [T]he Defendant's reliance on Apex Doctrine is flawed.  The Sixth Circuit has criticized the rule for abandoning the Rule 26 requirements to justify a protective order: that harms "must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)). In *Serrano* the Court ultimately held that the court below "erred as a matter of law in relying on 'apex doctrine' to grant the protective order." *Id.* at 902. Thus, while the potential probative value of the testimony and potential burden to the deponent are highly relevant to Rule 26 analysis, it would be an error of law to rely on Apex Doctrine.

2021 WL 1235266.  However, this Court concluded that the exception to the rule applied because the "sought testimony falls outside the scope of discovery" and because Petty had engaged in certain litigation tactics.  Specifically, Petty "cancelled depositions, failed to ask relevant questions, refused to depose any other corporate witness, and attempts gamesmanship."  In these exceptional circumstances, Petty was "not entitled to the depositions" from Bluegrass's CEO.  No such exceptional circumstances apply in the present case.

    5.  In their affidavits, at Paragraphs 7 and 8, Hyman and Zanziper assert that:

> 7. I have no direct, independent, personal, special, nor unique knowledge of any business administration, policies, procedures, budgeting, goals, targets, finances, census, nor staffing at Stonecreek.
>
> 8. I have no special, nor unique knowledge of any operations of Clearview. It has employees in Kentucky responsible for same.

[Doc. 53-1].  Plaintiff persuasively argues that the email exchanges at Doc. 54-2 are "demonstrative of Mr. Hyman's and Mr. Zanziper's involvement with and knowledge of many aspects of nursing home operations (referral and admissions of patients, regulatory compliance, patient-specific progress/condition information, daily census reports, daily labor reports) pertaining to facilities operated and owned by entities in which they hold exclusive ownership/membership interests and control."  [Doc. 54 at PageID.609].  The email exchanges at Doc. 54-2 are replete with references to "Stonecreek" and "Clearview."  They belie Hyman and Zanziper's Assertions 7 and 8.

    6.  Evidence of a defendant's financial worth is generally admissible for the purpose of evaluating a claim for punitive damages.  *Penman v. Correct Care Sols., LLC*, No. 518CV00058TBRLLK, 2021 WL

3134255 (W.D. Ky. July 23, 2021) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)).  A plaintiff seeking punitive damages is generally entitled to discover information relating to a defendant's financial condition in advance of trial, without making a prima-facie showing that he is entitled to recover punitive damages.  *Id.* (citing *Corizon Health, Inc. v. CorrecTek, Inc.*, No. 5:17-CV-00035-TBR, 2018 WL 2768883 (W.D. Ky. June 8, 2018)).

7.   The policies, practices, and procedures of Stonecreek and Clearview and their financial worth are relevant to Plaintiff's claims, including her claims for punitive damages claims.

8.   A party seeking a protective order must illustrate "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" one of the "enumerated harms" listed in Fed. R. Civ. P. 26(c)(1)(A).  *Harris* (copy at Doc. 54-1) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)).

9.   Defendants fail to show by a particular and specific demonstration of fact one of the enumerated harms listed in Fed. R. Civ. P. 26(c)(1)(A).

**Order**

For the foregoing reasons, the motion of Defendants for a protective order [Doc. 53] is hereby DENIED.