United States District Court
Western District of Kentucky
Paducah Division
Case No. 5:21-cv-00092-BJB-LLK

ROSE W. LAWRENCE,                                                            PLAINTIFF,
*as Surviving Spouse and Executrix of Estate*
*of Joe F. Lawrence, Deceased, and on*
*behalf of the wrongful death beneficiaries of*
*Joe F. Lawrence*

v.

PADUCAH CENTER FOR HEALTH                                      DEFENDANTS
AND REHABILITATION LLC, *et al*,

## <u>MEMORANDUM OPINION AND ORDER</u>

This case was removed to federal court on July 13, 2021. [DN 1]. Plaintiff raises

negligence, medical negligence, corporate negligence, violations of long-term care resident's

rights, and wrongful death claims. [DN 1-1]. Pending before this Court is Plaintiff's motion to

compel discovery to which Defendant Paducah Center for Health and Rehabilitation responded,

and Plaintiff replied. [DN 58, 60, 61]. Fully briefed, this matter is ripe for review. District Judge

Benjamin Beaton referred this matter to Magistrate Judge Lanny King for ruling on all discovery

motions pursuant to 28 U.S.C. § 636(b)(1)(A). [DN 6].

For the reasons below, this Court will **GRANT in part and DENY in part Plaintiff's**

**motion to compel. [DN 58].**

## BACKGROUND

Plaintiff Rose Lawrence alleged that Defendant Stonecreek Health and Rehabilitation

was negligent in their care of her husband, Joe F. Lawrence, during his residency at Stonecreek

from December 9, 2019 to January 27, 2020. [DN 1-1] at 5. Joe Lawrence was transferred from

Stonecreek to a hospital, where he died on January 29, 2020. *Id*. Plaintiff alleges that "[d]ue to

the wrongful conduct of Nursing Home Defendants, Joe F. Lawrence suffered [an] accelerated deterioration of his health and physical condition beyond that causes by the normal aging process, (a) pressure sores; (b) sepsis; Poor hygiene; (d) Severe pain; and (e) Death." *Id*. at 13.

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff filed this Motion to Compel Discovery on April 21, 2023. [DN 58]. Plaintiff's motion includes thirty-seven requests for production. Id. at . Plaintiff seeks

1. Policies [RFP 2]
2. In-Service Training Docs/Training Videos [RFP 3]
3. Wound Reports [RFP 8, 9]
4. Reports that track quality indicators [RFP 8, 9, 56]
5. Consumer/Resident/Employee satisfaction surveys [RFP 10, 36]
6. Provider agreements [RFP 19, 20]
7. Resident Council Meeting Minutes [RFP 21]
8. Personnel docs for administration and caregivers [RFP 22-31, 44-46]
9. Schedules from December 2019 [RFP 35]
10. Mock surveys [RFP 37]
11. 1-800 hotline complaints [RFP 39]
12. Nursing home financial reports/Budgets from residency [RFP 41, 47, 48, 49]
13. Tax Returns/Financial docs [RFP 60-66]

DN 59 at 663.

Defendant Paducah Health responded to each with objections. [DN 60]. Defendant also seeks to claw back Defendants' responses to Plaintiff's Request for Production 40 and 57. [DN 58] at 663.

**Legal Standard**

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In assessing whether the request is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The party seeking the discovery must show the requests are relevant to the claims or defenses in the instant action. *Albritton v. CVS Caremark Corp.*, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing *United States ex rel. Gruenbaum v. Werner Enters., Inc*., 270 F.R.D. 298, 302 (S.D. Ohio 2010)). The Sixth Circuit has noted that "[i]t is well established that the scope of discovery is within the sound discretion of the trial court." *Pitman v. Experian Info. Sols., Inc*., 901 F.3d 619, 642 (6th Cir. 2018) (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). A court must, on motion or on its own, "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

According to the Federal Rules of Civil Procedure, "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). A responding party "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

A responding party may claim information is "privileged or subject to protection as trial preparation material, [but] the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The Federal Rules of Evidence provide that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *see also In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006).

Plaintiff's discovery requests are addressed below in the categories in which Plaintiff provided them.

## Discussion

### *Plaintiff's Request for Production: Policies [RFP 2]:*

Plaintiff received policies pertaining to wounds, but "requests additional policies regarding management, administration, and resident care." [DN 58] at 664. Defendants objected to Plaintiff's request for additional policies as "vague, ambiguous, and overbroad" as well as not proportional. [D 60] at 743. Defendant objected to Plaintiff's request with

> This Request is vague, ambiguous, overly broad, unduly burdensome and improperly seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product, 42 U.S.C. § 1396(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.515(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

[DN 60-1] at 757.

Usage of boilerplate objections to interrogatories and request for production is not permitted under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 33(b)(4). By definition, "boilerplate" is "[r]eady-made or all-purpose language that will fit in a variety of documents." Boilerplate, *Black's Law Dictionary* (10th ed. 2014). Federal courts within the Sixth Circuit consistently address this issue. *See, e.g., Wesley Corp. v. Zoom T.V. Prods., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("Defendants' 'objections' to these discovery requests are the typical boilerplate objections known and detested by courts and commentators— and receiving parties—around the nation . . . . Thus, '[a]n objection to a discovery request is boilerplate when it merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.'") (quoting *Guzman v. Irmadan, Inc*., 249 F.R.D. 399, 401 (S.D. Fl. 2008)); *Janko Enters., Inc. v. Long John Silver's, Inc*., No. 3:12-cv-345, 2013 WL 5308802, at *7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported 'boilerplate' objections clearly are improper."); *Mitchell v. Universal Musical Grp Inc*., No. 3:15-CV-174-JHM, 2018 WL 1573233, at *5 (Mar. 30, 2018) (overruled in part on other grounds) ("Aside from wasting the time of both the Court and the receiving party, boilerplate objections to interrogatories and requests for production are forbidden by the Federal Rules of Civil Procedure." Magistrate Judge Lindsay found that the *Mitchell* defendant waived objections to discovery requests due to an overreliance on boilerplate objections.)

Although this Court declines to find that Defendants have waived objections through the use of boilerplate objections in this case, it notes that their objections have made frequent use of boilerplate language. Due to a lack of specificity in the objections explaining why the request is vague, ambiguous, and overbroad or details why the cost of

compliance is disproportional and the relevance of the material, **Defendants are**

**ORDERED TO PRODUCE** the policies [RFP 2].

***Plaintiff's Request for Production: In service training documents [RFP 3]:***

Plaintiff seeks in-service and training videos to "show how Defendants training their

employees to provide are to Mr. Lawrence, who attended [the] training sessions, and when those

training sessions occurred." [DN 58] at 664.

Defendant maintains the request is "unreasonably broad" and "in-service documentation

from the residency time period could not previously be located." [DN 60] at 743–44. Defendant

objection to the in-service training sessions mirrors the language included above. [DN 58-1] at

677.

Due to a lack of specificity in the objections and the relevance of the material,

**Defendants are ORDERED TO PRODUCE** the policies [RFP 3] if possible. If Defendants

cannot locate the policies, Defendant shall explain which policies cannot be located and why

they cannot be located.

***Plaintiff's Request for Production: Wound Reports [RFP 8, 9], Reports that track quality indicators [RFP 8, 9, 56], and Consumer/resident/employee satisfaction surveys [RFP 10, 36]:***

Plaintiff seeks Weekly Wound Reports prepared by the Assistant Director of Nursing and

then submitted to Defendant's Regional Clinical Director, Lynn Jones. [DN 58] at 664.

Defendant contends that the "requests seek a broad and vague list of items" that "are not

proportional." [DN 60] at 748.

Plaintiff seeks Weekly Director of Nursing Reports that track quality indicators similar to

quality indicator reports drafted by the Centers for Medicaid and Medicare Services and

"[i]nformation documenting consumer/resident/employee satisfaction . . . to show Defendants'

knowledge of specific problems and deficiencies within the facility that they failed to correct

before Mr. Lawrence's care was impacted." [DN 58] at 665. According to Defendant, "[t]hese requests are quality assured privileged" under the Federal Nursing Home Reform Act. [DN 60] at 744. According to Plaintiff, the wound reports were submitted to Defendant Clearview's Regional Clinical Director, who was not a member of the quality assurance committee. According to Defendant, the wound reports were "submitted to an outside consultant at Clearview." [DN 60] at 744.

Both parties rely on the Supreme Court of Kentucky decision in *Henderson County Health Care Corporation v. Wilson* in their arguments about quality assurance privilege. The plaintiff in *Henderson County*, like the deceased party in this case, suffered from bedsores while in a nursing home facility. 612 S.W.3d 811 (Ky. 2020). The defendant nursing home refused to comply with some of the plaintiff's requests for production by asserting privilege under the Federal Quality Assurance Privilege portion of the Federal Nursing Home Reform Act. *Id*. at 815. *See also* 42 U.S.C. § 1396r *et seq*.; 42 U.S.C. § 1395i-3, *et seq*. The Federal Nursing Home Reform Act provides that

> A skilled nursing facility must maintain a quality assessment and assurance committee, consisting of the director of nursing services, a physician designated by the facility, and at least 3 other members of the facility's staff, which (i) meets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary and (ii) develops and implements appropriate plans of action to correct identified quality deficiencies. A State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph.

42 U.S.C. § 1395i-3(b)(1)(B).

The Kentucky Supreme Court in *Henderson County* considered whether nurse consultant reports prepared for the defendant nursing home's Quality Assurance Performance Improvement (QAPI) committee were privileged. In the *Henderson County* case, nurses employed by the third-

party contractor visited the defendant nursing home on a monthly basis, prepared reports, and provided the reports to the QAPI committee. 612 S.W.3d at 815–16. The QAPI committee then submitted to the prepared reports for the committee to an independent contractor with whom the committee consulted. *Id.* at 815. The Kentucky Supreme Court noted that the third-party contractor functioned as an agent of the QAPI committee because the defendant nursing facility was a smaller facility and "it may not be feasible for a small nursing facility to employ, on its own staff, persons with quality assurance experience." *Id*. at 822.

In *Henderson County*, the Kentucky Supreme Court noted that "the FQAP protects 'the records of' a nursing facility's quality assessment and assurance committee from disclosure." *Id.* at 818. The Kentucky Supreme Court then noted that two approaches to FQAP have emerged, the Missouri Rule and the New York Rule. *Id.* The Kentucky Supreme Court adopted the New York Rule and held that the reports prepared by nurse consultants for the QAPI committee were protected by the FQAP. *Id.* at 820 – 21.

Documents that are "created by or at the behest of a quality assurance committee for quality assurance purposes of the committee will likely be protected by the FQAP." *Id.* The court clarified that "if a document is generated for the express purpose of aiding the committee in its work, then it will likely be privileged." *Id.* If the documents were created to aid a quality assurance committee identify, "develop and implement appropriate plans of action to correct identified quality deficiencies," even if they were generated by someone outside the quality assurance committee, the documents would be protected. *Id*. (citing 42 U.S. C. § 1396r(b)(1)(B)) (cleaned up).

The Kentucky Supreme Court cautioned, however, that "[f]irst, we must make clear at a quality assurance committee cannot be used to a 'create' a privilege where one did not exist

previously. By this we mean that a nursing home cannot 'funnel' documents through a quality assurance committee in an attempt to confer privilege on otherwise unprivileged records." *Id*. at 821. According to the Kentucky Supreme Court, "[d]ocuments generated outside of the committee and for purposes unrelated to the committee are not protected by the FQAP merely because the committee reviews the documents during the course of its work." *Id*. The court also noted that "[i]f documents are required to be generated pursuant to other legal requirements, those documents are not privileged." *Id*.

A sister court within the Sixth Circuit also considered FQAP in a discovery dispute. *Brown v. Sun Healthcare Grp., Inc*. No. 3:06-cv-240, 2008 WL 1751675, at * 4 (E.D. Tenn. Apr. 14, 2008). That court adopted the Missouri Rule, which limits privilege more than the New York Rule, since adopted by the Kentucky Supreme Court in *Henderson County*, and found the privilege "applies only to the committee's own records, including its minutes, internal working papers, and statements of conclusions, not to documents generated outside the committee and submitted to the committee for its review." *Id*.

In the case before this Court, Defendant argues that the reports and satisfaction surveys were prepared for "and then submitted to an outside consultant at Clearview." [DN 60] at 744. Plaintiff contends the reports were submitted to Defendant's Regional Clinical Director, Lynn Jones, who was not a member of the quality assurance committee. It is unclear from Defendant's response who are members of the quality assurance committee under the statute. *See* 42 U.S.C. § 1396r(1)(B)(ii) (Privilege applies to reports prepared by or at the request of a committee "consisting of the director of nursing services, a physician designated by the facility, and at least 3 other members of the facility's staff.") It is also unclear if that committee "[met] at least quarterly to identify issues with respect to which quality assessment and assurance activities are

necessary and (ii) develop and implement appropriate plans of action to correct identified quality deficiencies." *Id*. Finally, the documents appear to have been "review[ed] . . . during the course of its work" rather than "generated for the express purpose of aiding the committee." *Henderson Cnty.*, 612 S.W.3d at 821. FQAP is unavailable to Defendants under both the Missouri and the New York Rules.

According to Defendants, the Consulting and Management Agreements between Stonecreek and Clearview Healthcare Management are included with Exhibit 1. [DN 60-1]. The agreements are unavailable at Exhibit 1 and Defendants have not provided any information about Stonecreek's quality assurance committee. Also, the Court is unable to assess the contractual relationship between Stonecreek and Clearview to determine if Clearview was a third-party contractor functioning as an agent of Stonecreek's quality assurance committee.

Defendants assert a general "privilege [] found in KRS 311.317 which extends to medical malpractice suits like this one." [DN 60] at 743. The Court assumes Defendants intended to reference KRS § 311.377. This Court has analyzed this statute previously, and noted that "[f]irst, KRS 311.377 applies to employees performing a designated professional review function as part of a patient safety and quality improvement initiative." *Stumph v. Spring View Physician Pracs., LLC*, No. 3:19-cv-00053, 2021 WL 395762, at *3 (W.D. Ky. Feb. 4, 2021). Also,

> [s]ince the privilege only exists during the performance of a designated professional review function, it is narrowly applied. KRS 311.377(3) specifically provides that items used in these proceedings are not privileged if they are subject to discovery independently of the professional review function. Thus, as applied to the disputed items, the privilege extends only to the committee report and investigative interviews conducted. Information and documents that are clearly discoverable are not entitled to the protection of KRS 311.377(2) merely because they are placed in the file.

*Id*.

The privilege available under KRS § 311.377 does not apply to the material sought in this case for the same reason the quality assurance privilege is not available.

Without any further information about a quality assurance committee, its members, and Stonecreek's relationship with Clearview and because the information sought is relevant, **Defendants are ORDERED TO PRODUCE** the Wound Reports [RFP 8, 9], Reports that track quality indicators [RFP 8, 9, 56], and Consumer/resident/employee satisfaction surveys [RFP 10, 36].

***Plaintiff's Request for Production: Provider agreements [RFP 19, 20]:***

According to Plaintiff, "Defendants were required to enter into provider agreements with CMS and the State of Kentucky, which require Defendants to provide care in compliance with the State and Federal Regulations governing nursing homes in exchange for the privilege of accepting residents whose care is paid for Medicare and Medicaid funds." [DN 58] at 666. The contracts are relevant because they "establish Defendants' contractual duties owed to Mr. Lawrence as a Medicare recipient and [a] third-party beneficiary . . . and further assist in estimating the standard of care applicable to Defendants." *Id.*

Defendants argue that the contracts are "do not set the standard of care and are not relevant in this action." [DN 60] at 746. Because Plaintiff's "experts are not relying on provider agreements to criticize the nursing home[,] consequently they are immaterial and should not be discoverable." *Id.*

The Court disagrees. The contracts are relevant and no privilege attaches. **Defendants are ORDERED TO PRODUCE** the provider agreements [RFP 19, 20].

***Plaintiff's Request for Production: Resident Counsel Meeting Minutes [RFP 21]:***

According to Defendants, the minutes where inadvertently not produced and have since been produced. [DN 60] at 746. This issue is moot and no longer before the Court.

***Plaintiff's Request for Production: Personnel documents for administration and caregivers [RFP 22–31, 44–46]:***

Plaintiff alleges that "Defendants understaffed the facility with poorly trained staff to the detriment of Mr. Lawrence." [DN 58] at 666. Plaintiff seeks information "to show the level, qualification, and performance of the staff at the facility [as' [t]he quality of staffing is relevant to this litigation." *Id*.

> REQUEST TO PRODUCE NO. 22: Please produce applications for employment for all persons employed at the facility during the residency.
> REQUEST TO PRODUCE NO. 23: Please produce documentation of criminal background checks for all persons employed at the facility during the residency.
> REQUEST TO PRODUCE NO. 24: Please produce licensing/certification documentation for all persons employed at the facility during the residency.
> REQUEST TO PRODUCE NO. 25: Please produce all documentation reflecting disciplinary actions including reprimands and complaints by third parties, for all persons employed at the facility during the residency.
> REQUEST TO PRODUCE NO. 26: Please produce documents addressing or memorializing all complaints registered by employees who worked at the facility during the residency.
> REQUEST TO PRODUCE NO. 27: Please produce all personnel files, in their entirety, for any RN, LPN, CNA, Nurse Aide, or any other licensed or unlicensed individual that rendered care to Joe F. Lawrence.
> REQUEST TO PRODUCE NO. 28: Please produce performance evaluations for all persons employed at the facility during the residency.
> REQUEST TO PRODUCE NO. 29: Please produce exit interviews/forms for all persons who ceased working at the facility during the residency.
> REQUEST TO PRODUCE NO. 30: Please produce resignation letters for all persons who resigned (voluntarily or involuntarily) from the facility during the residency.
> REQUEST TO PRODUCE NO. 31: Please produce termination letters for all persons who were terminated from the facility during the residency.
> REQUEST TO PRODUCE NO. 44: Please produce the employee files of each Administrator employed at the facility during the residency.
> REQUEST TO PRODUCE NO. 45: Please produce the employee files of each Director of Nursing employed at the facility during the residency.
> REQUEST TO PRODUCE NO. 46: Please produce the employee files of each Assistant Director of Nursing employed at the facility during the residency.

DN [58-1] at 684–86; 691.

According to Defendants, Plaintiff seeks the employment files of seventy people. Defendant argues "this is still far too broad." [DN 60] at 746. According to Defendant, redacting employment files of seventy people would "cost Defendants significant time and money" so instead "Plaintiff should limit its request to employees pertinent to the case and documents in their employee files related to the harms alleged." *Id.*

This Court agrees with Defendant that Plaintiff's request for all employee files is too broad. **Plaintiff's Request for Production of Personnel documents for administration and caregivers [RFP 22–31, 44–46] is DENIED**. Plaintiff shall limit the request to employees responsible for the decedent's care.

### *Plaintiff's Request for Production: Schedules from December 2019 [RFP 35]:*

According to Defendants, they have provided punch detail reports for December 2019. [DN 60] at 747. This issue is moot and no longer before the Court.

### *Plaintiff's Request for Production: Mock surveys [RFP 37]:*

According to Plaintiff, mock surveys "would show Defendants' knowledge and notice of specific problems akin to those suffered by Mr. Lawrence but which Defendants failed to correct." [DN 58] at 667.

> REQUEST TO PRODUCE NO. 37: Please produce all surveys, mock survey visits, documents, reports, and tools, including quarterly site visits and all focused/follow up visits, applicable to the residency of Joe F. Lawrence, and six (6) months before, which memorialize Nursing Home Defendants' evaluation and monitoring of the facility's compliance with mandatory regulations, policies and procedures, and care given to the residents.

[DN 58-1] at 688.

According to Defendant, "[m]ock surveys clearly fall within the scope of the federal quality assurance privilege" and "[t]hey are also wholly irrelevant to the specific care Mr. Lawrence did or did not receive." [DN 60] at 747.

As noted *infra*, Defendants have failed to show quality assurance privilege applies. As mock surveys are relevant to show whether Defendants were aware of specific problems similar to those Joe Lawrence experienced, **Defendants are ORDERED TO PRODUCE** the mock surveys [RFP 37].

### *Plaintiff's Request for Production: 1-800 Hotline Complaints [RFP 39]:*

According to Defendants, they have provided the complaints. [DN 60] at 749. This issue is moot and no longer before the Court.

### *Plaintiff's Request for Production: Nursing home financial reports/budgets from residency [RFP 41, 47–49/tax returns [RFP 60–66]:*

According to Plaintiff, "Defendant Clearview set budgetary goals for Stonecreek and the other facilities it managed targeting patient admissions." [DN 58] at 668. Plaintiff alleges that "Defendants encouraged the nursing home to increase patient admissions so as to meet the budget, despite knowledge that the facility was short-staffed." *Id.* Plaintiff seeks tax returns (1) to show Defendants are interrelated, and (2) because the financial condition is relevant to Plaintiff's claim for punitive damages. [DN 58] at 668.

> REQUEST TO PRODUCE NO. 41: Please produce all documents that reflect or are related to maintaining the budget at the facility, including but not limited to, inter-company memoranda, correspondence, handwritten notes, and e-mails during the residency.
> REQUEST TO PRODUCE NO. 47: Please produce all budget and budget variance reports that memorialize Nursing Home Defendants' evaluation of the expenditures, including but not limited to staffing, supplies, and food at the facility, and how the aforesaid expenditures compared to budget projections, for the facility during the residency and six (6) months prior.
> REQUEST TO PRODUCE NO. 48: Please produce all the rolled-up budgets and budget variance reports that memorialize Nursing Home Defendants' evaluation of

the expenditures, including but not limited to staffing, supplies, and food at the facility, and how the aforesaid expenditures compared to budget projections, for the region encompassing the facility, during the residency, and six (6) months before the residency.

REQUEST TO PRODUCE NO. 49: Please produce all the rolled-up budget variance reports that memorialize Nursing Home Defendants' evaluation of the expenditures, including but not limited to staffing, supplies, and food at the facility, and how the aforesaid expenditures compared to budget projections, for Nursing Home Defendants' nursing home operations in the United States during the residency, and six (6) months before the residency.

DN 58-1 at 690–93.

According to Defendants, "Plaintiff's requests seek a broad and vague list of items . . . . The items sought are not proportional. Plaintiff's request[s] seek considerably more than what is needed to show 'financial worth.' [DN 58 at 7]. Request 49, in vague language, seeks 'all rolled-up budget variance reports' for 'operations in the United States.' This clearly goes well beyond what could be of use in proving Plaintiff's case.'" [DN 60] at 748.

Defendants rely on an Eastern District of Kentucky opinion, *Mattingly v. R.J. Corman R.R. Grp., LLC*, while Plaintiff relies on this Court's opinion in *Penman v. Correct Care Sols., LLC*, 570 F.Supp.3d 484 (E.D. Ky. 2021); No. 5:18-cv-00058, 2021 WL 3134255 (W.D. Ky. July 23, 2021).

*Mattingly v. R.J. Corman Railroad Group* involved a request for external audits that contained "sensitive financial details about nonparties." 570 F.Supp.3d 484, 486 (E.D. Ky. 2021). The court found that information the plaintiff sought was information that the plaintiff "already has learned and/or has had ample opportunity to learn the relevant information that the audits would provide through written discovery and through depositions of various R.J. Corman officers." *Id.* at 488. The court then outlined in detail the plaintiff's prior opportunities to obtain the information. That court found that

"[a]ccordingly, given Mattingly's prior access to the sought information, the audits are likely cumulative and of relatively low importance to the issues at stake in this litigation, even if they have base relevance to Mattingly's case." *Id*. at 491.

The financial documents are relevant to negligence claim so are discoverable. The Court agrees with Defendant that the request to produce "all the rolled-up budget variance reports that memorialize Nursing Home Defendants' evaluation of the expenditures . . . for Nursing Home Defendants' nursing home operations in the United States during the residency" is beyond the scope of what is relevant to Stonecreek's care of Joe Lawrence during his residency.

**Defendants are ORDERED TO PRODUCE** the Nursing home financial reports/budgets from residency [RFP 41, 47, 48].

Plaintiff also seeks the following financial information "in support of her claim for punitive damages and to also show the interrelatedness of Defendants" [DN 58] at 668:

> REQUEST TO PRODUCE NO. 60: Please produce all Audited financial statements of all Nursing Home Defendants for the years 2019 and 2020.
> REQUEST TO PRODUCE NO. 61: Please produce all Unaudited financial statements of all Nursing Home Defendants for the years 2019 and 2020.
> REQUEST TO PRODUCE NO. 62: Please produce all State and Federal Income Tax Returns for all Nursing Home Defendants for the years 2019 to the present.
> REQUEST TO PRODUCE NO. 63: Please produce all loan applications filed by, or on behalf of the Nursing Home Defendants during the years 2019 and 2020.
> REQUEST TO PRODUCE NO. 64: Please produce all annual reports prepared by Nursing Home Defendants and/or their parent company, for the years 2019 to the present.
> REQUEST TO PRODUCE NO. 65: Please produce all Securities and Exchange Commission 10-K filings for Nursing Home Defendants and/or their parent company, for the years 2019 and 2020.
> REQUEST TO PRODUCE NO. 66: Please produce all Profit and Loss Statements of all Nursing Home Defendants for the years 2019 to the present.

DN 58-1, at 697–699.

With regards to the request for tax returns, this Court has noted that "[i]t is well-settled in the Sixth Circuit that tax returns are not privileged from disclosure." *Polylok v. Bear Onsite, LLC*, No. 3:17-cv-00535, 2017 WL 1102698, at *5 (W.D. Ky. Mar. 2017) (citing *Demarco v. C&L Masonry, Inc.*, 891 F.2d 1236 (6th Cir. 1989)).

This Court has previously held that "'[u]nder federal law, evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded.'" *Penman v. Correct Care Sols., LLC*, No. 5:18-cv-00058, 2021 WL 3134255, at *8 (W.D. Ky. July 23, 2021) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981)) (cleaned up). Rather than require a plaintiff seeking punitive damages to make a prima face showing he is entitled to recover punitive damages, "[t]he majority of federal courts to have considered the question [and] have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages." *Id.*

The Court agrees with Defendants that a request for loan application is "not relevant or proportional" to Plaintiff's negligence claim. Because, however, the tax returns and other reports sought, however are relevant to both Plaintiff's breach of care claim and Plaintiff's punitive damages claim, the **Defendants are ORDERED TO PRODUCE** the Nursing home financial reports/budgets from residency/tax returns [RFP 60–62, 64–66].

### Claw Back List

Defendants provided Plaintiff a claw back list of 509 line-items previously produced that are marked "attorney-clint privilege, HIPPA, and/or the quality assurance

privilege." [DN 58-3] at 709. Defendant also marked some of the emails or documents as "Confidential Financial information." *Id.*

As noted above, Defendants have failed to show that quality assurance privilege applies. Also, as noted above, financial information is not automatically subject to privilege or confidentiality. Medical information about other patients could fall under HIPAA protection, and if so, Defendants shall redact the patient identifiers or seek or a protective order consistent with the Local Rules of this Court.

Defendant has labeled six emails on the claw back list as "attorney-client privilege." [DN 58-3].

This matter was removed to federal court on diversity grounds [DN 1], and "[i]n a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citations omitted).

Kentucky's "lawyer-client privilege" protects "a confidential communication made for the purpose of facilitating the rendition of professional legal services." KRE 503(b). The privilege is not absolute, as noted in the exceptions in KRE 503(d) and the privilege can be waived if disclosed to the third party. KRE 509.

In the matter before the Court, Defendants claim that "Redaction through emails between WoundCentrics and facility (Selha Abel, associate counsel, and Lynn Jones;" "emails from Selha Abed (associate counsel);" and email chain regarding WoundCentrics with Selha Abel (associate counsel) are attorney-client privileged. [DN 58-3] at 713–14. The descriptions, however, fail to identify the positions of the parties, if the communications were "made for the purpose of facilitating the rendition of professional

services" or if another party was copied on the emails, thus waiving the privilege.  The line items marked "emails from A. Long to Vicki@breitlaw.com regarding 'Starks v. Stonecreek,'" "email from S. Steward to Vicki Barringer – Starks v. Stonecreek," and "Vicki Barringer to S. Stewart – Starks v. Stonecreek," *Id.* at 715 – 16, might be privileged, but the parties and their positions are not identified, and the description does not include whether a third-party was included on the email.

Should Defendants seek to claim attorney-client privilege, Defendants shall reexamine the specified line-items concerning attorney-client privilege as outlined in this order. Excepting the line-items marked "AC" for "attorney-client privilege," **Defendants are not permitted to claw back the documents provided on the claw back list, with the exception of 5502–5506, 5514–5518, 5609–5613, 6279–6282, 6457–6460, 6461–6464, which Defendants are ordered to supplement consistent with this order.**

***Defendants' Request for an in camera review and cost-shifting***

Defendants request that, should the Court allow discovery of the documents listed on the claw back list, the Court would review the material *in camera*. [DN 60] at 750. As explained *infra*, Defendants have failed to show quality assurance privilege and supplemental labeling of the line-items marked "AC" would clarify the attorney-client privilege issue.

Defendants also request that the Court should order cost-shifting because "the time commitment and high cost of producing this electronic discovery requires judicial intervention." [DN 60] at 750.

In general, there is a presumption that "the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). However, under Rule 26(c), a district court may issue an

order protecting the responding party from undue burden or expense by "conditioning discovery on the requesting party's payment of the costs of discovery." *Id.*, at 358. As noted by the Western District of Tennessee, a court considers, in descending order of importance, the following eight factors when determining whether the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues" and then if cost-shifting is appropriate under Federal Rule of Civil Procedure 26(c). *Union Ins. Co. v. Delta Casket Co., Inc*., No. 2:06-cv-02090, 2009 WL 10664840, at *6–7 (W.D. Tenn. Aug. 18, 2009) (citing Fed. R. Civ. P. 26(b)(2)(C)). The factors include:

> 1. The extent to which the request is specifically tailored to discover relevant information;
> 2. The availability of such information from other sources;
> 3. The total cost of production, compared to the amount in controversy;
> 4. The total cost of production, compared to the resources;
> 5. The relative ability of each party to control costs and its incentive to do so;
> 6. The importance of the issues at stake in the litigation; and
> 7. The relative benefits to the parties of obtaining the information.

*Id.* at * 7.

Defendants in this case ask the Court to consider cost-shifting because "Plaintiff's request for production of electronic discovery has created a time-consuming and expensive project for Defendants. With the wise array of search terms and a large time period, Defendants have been forced to review and organize thousands of documents." [DN 60] at 751. The Court finds that Defendants have not met their burden of overcoming the presumption that a responding party must bear their own expense of complying with discovery requests. Defendants' request for a cost-shifting is denied.

# CONCLUSION

**IT IS THEREFORE ORDERED**

Plaintiff's motion to compel production of RFP 2, 3,  8–10, 19– 21, 36, 37, 41, 47, 48, 56,

60–62, 64–66 is GRANTED; Plaintiff's motion to compel production of RFP 22–31, 44–46, 49,

63 is DENIED without prejudice. Plaintiff's motion to compel production of RFP 35 and 39 is

DENIED without prejudice as moot. Defendants are not permitted to claw back the line-items

listed on the claw back list, with the exceptions noted in this order.


July 14, 2023

**Lanny King, Magistrate Judge**
**United States District Court**